# Exhibit A

Erica A. Maharg (Bar No. 279396)
Nicole C. Sasaki (Bar No. 298736)
SAN FRANCISCO BAYKEEPER
1736 Franklin Street, Suite 800
Oakland, California 94612
Telephone: (510) 735-9700
Facsimile: (510) 735-9160
Email: erica@baykeeper.org
Email: nicole@baykeeper.org

Attorneys for Plaintiff
SAN FRANCISCO BAYKEEPER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER, a non-profit corporation,<br><br>　　　　　　Plaintiff,<br>　　v.<br>S.O.S. STEEL COMPANY, INC.,<br><br>　　　　　　Defendant. | Civil No. 5:19-cv-01201-SVK<br><br>[PROPOSED] CONSENT DECREE<br><br>(Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.*)<br><br><br>Honorable Susan van Keulen |

# CONSENT DECREE

The following Consent Decree is entered into by and between Plaintiff San Francisco Baykeeper ("Plaintiff" or "Baykeeper"), and Defendant S.O.S. Steel Company, Inc. ("Defendant" or "SOS Steel"). The entities entering this Consent Decree are each an individual "Settling Party" and collectively "Settling Parties."

WHEREAS, San Francisco Baykeeper is a non-profit public benefit corporation organized under the laws of the State of California with its main office in Oakland, California;

WHEREAS, Baykeeper's mission is to protect and enhance the water quality and natural resources of San Francisco Bay, its tributaries, and other waters in the Bay Area, for the benefit of its ecosystems and communities on behalf of Baykeeper's approximately 1,500 members that live and/or recreate in and around the San Francisco Bay Area;

WHEREAS, S.O.S. Steel Company, Inc. operates a metal fabrication facility located at 1160 Richard Avenue, Santa Clara, California (the "Facility");

WHEREAS, stormwater discharges associated with industrial activity at the Facility are regulated pursuant to the National Pollutant Discharge Elimination System (NPDES) General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 2014-57-DWQ (hereinafter "Industrial Stormwater Permit"), issued pursuant to Section 402 of the Federal Water Pollution Control Act (the "Clean Water Act" or "Act"), 33 U.S.C. § 1342. These industrial activities include, *inter alia*, structural steel fabrication, erection, and construction services;

WHEREAS, the Industrial Stormwater Permit includes the following requirements for all permittees, including SOS Steel: (1) develop and implement a stormwater pollution prevention plan (SWPPP), (2) control pollutant discharges using, as appropriate, best available technology economically achievable (BAT) or best conventional pollutant control technology (BCT) to prevent or reduce pollutants, (3) implement BAT and BCT through the development and application of Best Management Practices (BMPs), which must be included and updated in the SWPPP, and (4) when necessary, implement additional BMPs to prevent or reduce any pollutants that are causing or contributing to any exceedance of water quality standards;

WHEREAS, on or around December 5, 2018, Baykeeper served SOS Steel, the Administrator of

the U.S. Environmental Protection Agency (EPA), the Executive Director of the State Water Resources Control Board ("State Water Board"), the Executive Officer of the Regional Water Quality Control Board, San Francisco Bay Region ("Regional Water Board"), and the Regional Administrator of EPA Region IX, with a notice of intent to file suit ("60-Day Notice") under Section 505(b)(1)(a) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A), alleging violations of the Act and the Industrial Stormwater Permit at the Facility;

WHEREAS, on March 5, 2019, Baykeeper filed a complaint against SOS Steel in the United States District Court, Northern District of California, Civil Case No. 5:19-cv-01201-SVK;

WHEREAS, Baykeeper alleges SOS Steel is in violation of the substantive and procedural requirements of the Industrial Stormwater Permit and the Clean Water Act;

WHEREAS, SOS Steel denies all allegations and claims contained in the 60-Day Notice and the complaint and reserves all rights and defenses with respect to such allegations and claims;

WHEREAS, the Settling Parties believe it is in their mutual interest and choose to resolve in full Baykeeper's allegations in the 60-Day Notice and complaint through settlement and avoid the cost and uncertainties of litigation;

NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES, AND ORDERED BY AND DECREED BY THE COURT, AS FOLLOWS:

## I.   OBJECTIVES

1. It is the express purpose of the Settling Parties to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.*, and to resolve those issues alleged by Baykeeper in its 60-Day Notice and complaint.  In light of these objectives and as set forth fully below, SOS Steel agrees to comply with the provisions of this Consent Decree and to comply with the Industrial Stormwater Permit and all applicable provisions of the Clean Water Act.

## II.   TERM OF CONSENT DECREE

2. **Effective Date**:  The Effective Date of this Consent Decree shall be the date on which all Settling Parties execute the Consent Decree.

3. **Term of Consent Decree**:  This Consent Decree shall continue in effect until September 30, 2021 (the "Term"), at which time the Consent Decree, and all obligations under it, shall automatically

terminate, unless one of the Settling Parties has invoked Dispute Resolution in accordance with Paragraph 24.

4. **Early Termination**: If SOS Steel should cease industrial operations at the site and file a Notice of Termination (NOT) under the Industrial Stormwater Permit prior to the termination date of this Consent Decree, SOS Steel shall send Baykeeper a copy of the proposed NOT concurrent with its submittal to the Regional Water Board.  Within ten (10) days of the Regional Water Board's approval of the NOT, SOS Steel shall notify Baykeeper in writing of the approval and remit all outstanding payments, including stipulated payments, to Baykeeper.  In the event a new successor or assign continues industrial operations at the site and assumes responsibility for implementation of this Consent Decree pursuant to Paragraph 42, SOS Steel shall notify Baykeeper within ten (10) days of the transition.

### III. BEST MANAGEMENT PRACTICES

5. In order to further reduce or prevent pollutants associated with industrial activity from discharging via stormwater to the waters of the United States, SOS Steel shall implement additional appropriate structural and non-structural BMPs to, at a minimum, comply with the requirements of the Industrial Stormwater Permit.

6. **Non-Structural Best Management Practices**.  Beginning on the Effective Date, unless otherwise stated, SOS Steel shall implement all BMPs currently identified in the Facility's SWPPP and the following additional non-structural BMPs:

A. Storm Drain Inlet/Catch Basin Best Management Practices:

i. <u>Storm Drain Inlet/Catch Basin Inspections:</u>  Within thirty (30) days of the Effective Date and between September 1 and October 1 of each subsequent year, SOS Steel shall inspect any discharge and sampling points, filtration/treatment devices, and other BMPs in place at the Facility. SOS Steel shall promptly clean, as needed, each discharge and sampling point, filtration/treatment device, and other BMPs in order to remove any accumulated dust, sediment, solids, or debris.

ii. <u>Storm Drain Inlet/Catch Basin Maintenance and Cleaning</u>: On a weekly basis between October 1 to May 31 of each year ("Wet Season"), SOS Steel shall inspect all discharge and sampling points, filtration/treatment devices, and other BMPs in place at the Facility to ensure that they

are not in a condition that would materially impair their efficacy, and clean out accessible deposited sediment, trash or debris. SOS Steel shall properly dispose of any dust, sediment, trash, debris, or other removed pollutants.

         iii.      <u>Log of Storm Drain Inlet/Catch Basin Inspections, Maintenance and Cleaning</u>: SOS Steel shall prepare and maintain a log of the Storm Drain Inlet/Catch Basin Inspections, Maintenance and Cleaning described herein ("Maintenance Log"). The Maintenance Log shall indicate the staff who completed the maintenance activity and when it was completed. The Maintenance Log shall be made available for inspection by Baykeeper at any site inspection or otherwise within three (3) business days advance request by Baykeeper.

    B.    **Site Sweeping**: SOS Steel shall mechanically sweep the accessible paved areas of the Facility and shall also sweep non-accessible paved areas by hand or vacuum at least two (2) times per day during the Wet Season and at least one (1) time per day during the remaining portion of the year ("Dry Season") on each day that SOS Steel is actively operating. SOS Steel shall keep a log or checklist, as appropriate, of the on-site sweeping activity performed ("Sweeping Log"), and shall direct employees and/or contractors to accurately complete the Sweeping Log. The Sweeping Log shall indicate the employee or contractor who conducted the sweeping, the location of the sweeping, and the dates the sweeping activities occurred. The Sweeping Log shall be made available for inspection by Baykeeper at any site inspection or within three (3) business days of a request by Baykeeper.

    C.    **Abandoned or Inutile Equipment Storage and Removal**: Within thirty (30) days of the Effective Date, SOS Steel shall either store under cover or remove from the Facility all abandoned or broken equipment or materials no longer considered for future use that have the potential to serve as the source for pollutant loading.

    D.    **Vehicle and Equipment Management**: SOS Steel shall implement BMPs to reduce or minimize pollutant release from equipment such as forklifts, hydraulic lifts, trucks, and other heavy equipment that are parked or stored uncovered at the Facility. Such BMPs shall include relocating the vehicles offsite to better facilitate sweeping of paved areas, placing drip pans under equipment stored or parked for a week or longer, weekly inspections for evidence of leaks from such equipment, and prompt clean-up of spills, drips, or leaks from such equipment. Any spilled substances and absorbent materials

used in cleaning up spills shall be disposed of in accordance with all local, state, and federal laws and regulations.

E.  **Vehicle and Equipment Maintenance**: SOS Steel shall not conduct routine (*i.e.*, non-emergency) vehicle or movable equipment maintenance or repair at the Facility in outdoor, uncovered areas from which stormwater discharges during rainfall events.

7.  **Structural Best Management Practices:** SOS Steel shall develop and implement the following structural BMPs:

A.  **Advanced Treatment System:** Within thirty (30) days of the Effective Date, SOS Steel shall submit to Baykeeper a proposal for an advanced treatment system to treat stormwater collected from Storm Drains #2, #3, #4, and #5 sufficient to achieve the Target Levels in Table 1 for heavy metals, oil and grease, total suspended solids, and pH.  Baykeeper shall provide written comments within fifteen (15) days of receipt.  Within thirty (30) days of receipt of Baykeeper's comments, SOS Steel shall make all of Baykeeper's changes to the proposal unless SOS Steel timely requests a meet and confer in accordance with Paragraph 24 to discuss any concerns.  SOS Steel shall install the approved advanced treatment system no later than October 1, 2019.

B.  **Settling**: No later than October 1, 2019, SOS Steel shall direct runoff from pervious areas to a settling tank or basin prior to on-site treatment.

C.  **Diligent Implementation of BMPs:** SOS Steel shall diligently file and pursue all required permit applications for the structural BMPs and shall diligently procure contractors, labor, and materials needed to complete all structural BMPs by the required deadlines.

D.  **Maintenance of BMP Structural Controls:** Beginning on the Effective Date or the date of installation, SOS Steel shall maintain all structural BMPs at the Facility in good operating condition and shall promptly repair any damaged or degraded structural BMPs.

8.  **Employee Training:** SOS Steel shall develop and implement an employee training program that meets the following requirements:

A.  Within thirty (30) days of the Effective Date, SOS Steel shall develop and implement a training program, including any training materials needed for effective implementation of the training program, for the Facility ("Training Program").  The Training Program shall ensure: (1) that there are

sufficient number of employees delegated to achieve compliance with the Industrial Stormwater Permit and this Consent Decree, and (2) that these employees are properly trained to perform the activities required by the Industrial Stormwater Permit and this Consent Decree. At a minimum, the Training Program shall require the following:

    i.    <u>Language.</u> SOS Steel shall conduct the Training Program in the language or languages in which all employees participating are fluent;

    ii.    <u>BMP Training.</u> SOS Steel shall train all employees on the BMPs included in this Consent Decree and the SWPPP to ensure that BMPs are implemented effectively and on schedule and structural BMPs are maintained properly. SOS Steel shall train individual employees on their specific responsibilities in implementing BMPs.

    iii.    <u>Stormwater Sampling Training.</u> SOS Steel shall designate an adequate number of employees necessary to collect stormwater samples as required by this Consent Decree. The Training Program shall include the proper sampling protocols to ensure stormwater samples are properly collected, stored, and submitted to a certified laboratory.

    iv.    <u>Visual Observation Training.</u> SOS Steel shall provide training on how and when to properly conduct visual observations to all employees performing visual observations at the Facility.

    v.    <u>Non-Stormwater Discharge Training.</u> SOS Steel shall train all employees at the Facility on the Industrial Stormwater Permit's prohibition of non-stormwater discharges, so that employees know what non-stormwater discharges are, that non-stormwater discharges can result from improper surface washing or dust control methods, and how to detect and prevent non-stormwater discharges.

    vi.    All employees at the Facility shall participate in the Training Program within thirty (30) days of the Effective Date and annually thereafter. New employees shall participate in the Training Program within thirty (30) days of their hiring date.

    vii.    The Training Program shall be provided by a representative of SOS Steel who is familiar with the requirements of this Consent Decree and the Industrial Stormwater Permit.

    viii.    SOS Steel shall maintain training records to document compliance with this section, and shall provide Baykeeper with a copy of these records within fourteen (14) days of receipt of

a written request.

      ix.      If and when appropriate, SOS Steel shall integrate any new training requirements resulting from this Consent Decree into the Facility SWPPP. SOS Steel shall also revise the Facility SWPPP, if and when appropriate, to identify the positions responsible for carrying out stormwater management, monitoring, sampling, and SWPPP implementation.

9. **Amendment of SWPPP**:

    A.    No later than October 31, 2019, SOS Steel shall amend the Facility SWPPP and Site Map and submit it to Baykeeper.

      i.      The amended Facility SWPPP shall incorporate the requirements and BMPs set forth in Section III of this Consent Decree and Section X of the Industrial Stormwater Permit.

      ii.      The amended Site Map shall comply with the Industrial Stormwater Permit, Section X.E. Specifically, the Site Map shall clearly denote: (a) the topography and the direction of stormwater flow for each drainage area of the Facility, (b) property boundaries, (c) known or suspected drop inlets, (d) ground type (pervious or impervious), (e) berms and the materials they are composed of, (f) any permanent structures and features, (g) discharge points, (h) sampling points, and (i) all other physical structures or items relevant under the Industrial Stormwater Permit and this Consent Decree.

      iii.      Baykeeper shall have thirty (30) days from receipt of the amended Facility SWPPP and Site Map to propose any changes to the amended Facility SWPPP or Site Map. Within thirty (30) days of notification by Baykeeper of any proposed changes or requests for clarification to the amended Facility SWPPP or Site Map, SOS Steel shall make all of Baykeeper's changes to the amended Facility SWPPP and/or Site Map unless SOS Steel timely requests a meet and confer in accordance with Paragraph 24 to discuss any concerns. Compliance with the Facility SWPPP, as amended in accordance with this Paragraph, shall at all times be a requirement of this Consent Decree.

    B.    During the term of the Consent Decree, SOS Steel shall revise the Facility SWPPP and Site Map if there are any material changes to the Facility's operations, including but not limited to, moving a discharge or sampling point, modifying the topography of the site so as to change a drainage area, or removing or adding structural BMPs. Within forty-five (45) days of the material change, SOS Steel shall revise the Facility SWPPP and/or Site Map, submit the revised Facility SWPPP and/or Site

Map to Baykeeper, and upload the revisions to the Storm Water Multiple Application and Report Tracking System (SMARTS) database.

  C. Baykeeper may provide comments to or seek clarification of any revised Facility SWPPP or Site Map within thirty (30) days of receipt. Within thirty (30) days of notification by Baykeeper of any proposed changes or requests for clarification to the revised Facility SWPPP or Site Map, SOS Steel shall make all of Baykeeper's changes to the revised Facility SWPPP or Site Map unless SOS Steel timely requests a meet and confer in accordance with Paragraph 24 to discuss any concerns. SOS Steel shall upload the revised Facility SWPPP or Site Map to SMARTS within thirty (30) days of finalizing revisions in accordance with this Consent Decree. Compliance with the Facility SWPPP, as revised in accordance with this Paragraph, shall at all times be a requirement of this Consent Decree.

10. **Additional BMPs**: The BMPs included in this Section constitute a preliminary approach to stormwater management at the Facility for the first Wet Season of the agreement. If, after implementing these BMPs, the sampling conducted in accordance with Section IV indicates that the Facility's stormwater discharges continue to exceed the Target Levels in Table 1, or otherwise do not meet water quality standards, SOS Steel shall propose additional BMPs as part of any Action Plan prepared in accordance with Paragraph 14.

    **IV.** **SAMPLING, MONITORING, INSPECTION & REPORTING**

11. **Sampling Program - Stormwater**: Beginning with the 2019-2020 Wet Season, SOS Steel shall collect and analyze stormwater samples from all discharge points according to the following schedule:

  A. SOS Steel shall collect and analyze samples from the first two (2) qualifying storm events (QSEs), as defined in Section XI.B. of the Industrial Stormwater Permit, within the first half of each Wet Season during the term of this Consent Decree (October 1 to December 31).

  B. SOS Steel shall collect and analyze samples from the first two (2) QSEs within the second half of each Wet Season during the term of this Consent Decree (January 1 to May 31).

  C. If SOS Steel is unable to take a sample from any discharge point during any of the first two (2) QSEs of the first half of the Wet Season or the first two (2) QSEs of the second half of the Wet Season, SOS Steel shall continue to sample from any subsequent QSE until four (4) samples have been collected from all discharge points in that Wet Season.

1      D.    In the event that SOS Steel is unable to collect four (4) samples in a Wet Season, SOS Steel shall explain in writing in the End-of-Season Summary under Paragraph 13 why it was unable to collect the required sample(s).

    E.    During the term of this Consent Decree, SOS Steel shall collect samples from the sampling and observations points identified as Storm Drain #1 and Advanced Treatment System.

    F.    Each stormwater sample must be analyzed for the presence of each of the parameters listed in Table 1 below.

| Table 1: Target Levels | | |
|---|---|---|
| **Parameter** | **Units** | **Consent Decree Target Level** |
| pH | SU | < 6.5 or >8.5 |
| Total Suspended Solids | mg/L | 100 |
| Oil and Grease Total | mg/L | 15 |
| Aluminum Total | mg/L | 0.75 |
| Iron Total | mg/L | 1.0 |
| Zinc Total | mg/L | 0.13 |
| Nitrite + Nitrate (as Nitrogen) | mg/L | 0.68 |

    G.    Should industrial processes materially change at the Facility, SOS Steel shall conduct sampling for any additional analytical parameters listed in Table 1 of the Industrial Stormwater Permit and additional toxic priority pollutants listed in 40 C.F.R. § 131.38 likely to be present in the Facility's stormwater discharges in significant quantities as a result of the changed industrial processes. SOS Steel shall notify Baykeeper of any such changes within thirty (30) days of such a change.

    H.    **Certified Lab**: Except for pH samples, SOS Steel shall have all stormwater samples collected pursuant to this Consent Decree delivered to a California state certified environmental laboratory for analysis within the time needed for analysis within laboratory method allowable hold times. The laboratory shall thereafter conduct analysis sufficient to detect individual constituents at or below the Target Levels set forth in Table 1. Baykeeper shall be permitted, and SOS Steel will authorize Baykeeper, to verify that the analysis of the lab analyzing SOS Steel's stormwater samples is proper.

1. **Sample Result Reporting**: After the Effective Date, SOS Steel shall provide complete results from sampling and analysis to Baykeeper within ten (10) calendar days and to SMARTS within thirty (30) days of receipt of the laboratory report from each sampling event.

12. **Rain Gauge**: Within thirty (30) days of the Effective Date, SOS Steel shall install a recording rain gauge capable of continuously recording rainfall at the Facility to 0.01 inches. SOS Steel shall maintain the rain gauge in accordance with manufacturers' recommendations, maintain records of all maintenance, and provide maintenance records within fourteen (14) days of a request by Baykeeper.

13. **End-of-Season Summary**: By July 15 following each Wet Season that occurs during the term of this Consent Decree, SOS Steel shall prepare and send to Baykeeper an End-of-Season Summary that includes: (1) a summary chart with all of the sample results from the previous Wet Season including the constituent concentration(s) from sample(s) collected at the Facility exceeding the Target Levels in Table 1 ("Exceedance(s)"); and (2) identification of any new BMP(s) that SOS Steel has implemented or will implement not already discussed in a prior End-of-Season Summary or Action Plan for the immediately previous Wet Season.

14. **Action Plan**: If any sample result shows any Exceedance(s) at the Facility, SOS Steel shall submit an Action Plan in addition to an End-of-Season Summary by July 15.

15. **Contents of Action Plan**: If an Action Plan is required, it shall include the following:

    A. The possible sources of the Exceedance(s) during the applicable Wet Season;

    B. A proposal for and evaluation of new site-specific BMPs designed to ensure no Exceedance(s) occur in the future;

    C. Data, drawings, and other design rationale demonstrating that the proposed site-specific BMPs will ensure no Exceedance(s) occur in the future; and

    D. A schedule to implement any revised and/or additional BMPs by the earliest practicable time, and no later than October 1 of the next Wet Season. In any Action Plan, SOS Steel shall consider appropriate structural BMPs as necessary to adequately address its Exceedances.

16. **Baykeeper Review of Action Plan**: Baykeeper shall have thirty (30) days from receipt to propose revisions to the Action Plan. However, if Baykeeper notifies SOS Steel within thirty (30) days of receipt of the Action Plan that it is unable to provide comments within thirty (30) days, Baykeeper

shall have an additional fifteen (15) days to propose revisions to the Action Plan.  Within thirty (30) days of receiving Baykeeper's proposed revisions, SOS Steel shall consider each of Baykeeper's recommended revisions to the Action Plan and accept them or timely request to meet and confer, in accordance with Paragraph 24.

17. **Implementation of Action Plan**:

    A.  SOS Steel shall implement the Action Plan(s) adopted pursuant to this Consent Decree as an obligation of this Consent Decree.

    B.  SOS Steel shall diligently file and pursue all required local agency applications for permits and/or approvals for the BMPs included in any Action Plan.  SOS Steel shall further diligently pursue the procurement of contractors, labor, and materials to complete all BMPs by the October 1 deadline in Paragraph 15.D.

    C.  Within thirty (30) days after BMPs set forth in an Action Plan pursuant to this Consent Decree are implemented, SOS Steel shall revise the Facility SWPPP and Site Map to include all BMP revisions or additions intended to reduce Exceedance(s) in stormwater and not otherwise already implemented and included in the Facility SWPPP or Site Map and shall provide Baykeeper with a copy of such revised SWPPP.

18. During each Wet Season, SOS Steel has an ongoing obligation to evaluate the BMPs implemented at the Facility and included in this Consent Decree and any current or previous Action Plans, and, if the Target Levels are exceeded, make attempts to reduce the concentrations to Target Levels for the remainder of the Wet Season.  SOS Steel shall use the results from subsequent stormwater samples as they become available to assist with their ongoing evaluation of the effectiveness of BMPs.

19. **Site Access**:  During the Term of this Consent Decree, SOS Steel shall permit representatives of Baykeeper to perform up to two (2) physical inspections per year of the Facility during operating hours ("Site Inspection").  Baykeeper shall provide SOS Steel twenty-four (24) hours' notice in advance of such Site Inspections.  Baykeeper shall comply with all safety instructions provided to Baykeeper by SOS Steel's staff during all Site Inspections.  During Site Inspections, Baykeeper shall be allowed to inspect and sample any stormwater discharges, inspect any logs, and take photos and/or videos.

20. **Reports**:  During the Term of this Consent Decree, SOS Steel shall provide Baykeeper with a

copy of all documents submitted to the Regional Water Board, the State Water Board, or any other government agency concerning the Facility's compliance with the Industrial Stormwater Permit. Such documents and reports shall be transmitted to Baykeeper via electronic mail at the time the documents are submitted to the government agency.

## V.   MITIGATION, FEES AND COSTS

21. **Environmental Mitigation Funding**: As mitigation for the alleged violations set forth in Baykeeper's 60-Day Notice and complaint SOS Steel shall pay the sum of ten thousand dollars ($10,000) to the Rose Foundation for Communities and the Environment ("Rose Foundation"), an environmental non-profit organization, for projects that will benefit the San Francisco Bay-Delta watershed. The Rose Foundation reports the grant funding made with the tendered funds to the U.S. Department of Justice and the Settling Parties, setting forth the recipient and purpose of the funds. Payment shall be made to Rose Foundation for Communities and the Environment, 201 4th Street, Suite 102 Oakland, California 94607 within thirty (30) days of the Effective Date, with notice to Baykeeper.

22. **Reimbursement of Fees and Costs**: SOS Steel shall reimburse Baykeeper in the amount of fifteen thousand dollars ($15,000) to help cover Baykeeper's reasonable investigation, expert, and attorneys' fees and costs, and all other reasonable costs incurred as a result of investigating the activities at the Facility related to this Consent Decree, bringing these matters to SOS Steel's attention, and negotiating a resolution of this action. Payment shall be made to Baykeeper, the first half ($7,500) within thirty (30) days of the Effective Date, and the second half ($7,500) within sixty (60) days of the Effective Date.

23. **Compliance Monitoring Funds:** SOS Steel shall provide to Baykeeper a total of three thousand dollars ($3,000) for costs and fees associated with monitoring SOS Steel's compliance with this Consent Decree through the termination date of this agreement. Payment shall be made to Baykeeper, the first half of the compliance monitoring fund payment ($1,500) within thirty (30) days of the Effective Date, and the second half ($1,500) within sixty (60) days of the Effective Date.

## VI.   DISPUTE RESOLUTION AND STIPULATED PAYMENTS

24. **Dispute Resolution**: If a dispute under this Consent Decree arises or the Settling Parties believe

that a breach of this Consent Decree has occurred, they shall follow the following procedure:

    A.    The Settling Parties shall schedule a meet and confer within ten (10) business days of receiving written notification from the other Settling Party of a request for a meeting to determine whether a violation of this Consent Decree has occurred and to develop a mutually-agreeable plan, including implementation dates, to resolve the dispute.

    B.    If the Settling Parties fail to meet and confer or the meet and confer does not resolve the issue, after at least seven (7) business days have passed after the meet and confer occurred or should have occurred, either Settling Party shall be entitled to all rights and remedies under the law, including bringing a motion before the United States District Court for the Northern District of California for the limited purpose of enforcing the terms of this Consent Decree.

    C.    The Parties shall be entitled to seek fees and costs incurred in any such action pursuant to the provisions set forth in the Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

25. **Stipulated Payments:** Following three (3) day Notice and opportunity to cure, SOS Steel shall pay the following stipulated payments during the Term of this Consent Decree.

    A.    $1,000 for each failure to collect a sample required under this Consent Decree;

    B.    $500 per day after the due date for each failure to timely submit any document, report or other communication required in this Consent Decree;

    C.    $500 per day for every business day (Monday through Friday, excluding state and federal holidays) past the due date that SOS Steel fails to submit any payments due under Paragraphs 21-23 of this Consent Decree.

    D.    $500 per day for every day past the due date that SOS Steel fails to install or implement a BMP required by this Consent Decree.

    E.    Any stipulated payments described above shall be paid within thirty (30) days of notification of the failure to comply, made out to Rose Foundation for Communities and the Environment, 201 4th Street, Suite 102 Oakland, California 94607, with a copy of payment sent concurrently to Baykeeper. Stipulated payment funds will be used by the Rose Foundation to fund projects that benefit the water quality in the San Francisco Bay-Delta watershed.

## VII.   JURISDICTION OVER SETTLING PARTIES AND SUBJECT MATTER OF CONSENT DECREE

26. **Jurisdiction.** For the purposes of this Consent Decree, the Settling Parties stipulate that the United States District Court of California, Northern District of California, has jurisdiction over the Settling Parties and subject matter of this Consent Decree. The Settling Parties stipulate that venue is appropriate in the Northern District of California and that Baykeeper has standing to bring any subsequent action or motion pursuant to the Dispute Resolution procedures herein.

27. **Jurisdiction to Enforce Consent Decree.** The Court referenced above shall retain jurisdiction over the Settling Parties and subject matter of this Consent Decree for the purpose of adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies.

28. **Submission of Consent Decree to DOJ.** Within three (3) business days of receiving all of the Settling Parties' signatures to this Consent Decree, Baykeeper shall submit this Consent Decree to the U.S. Department of Justice (DOJ) and EPA for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by DOJ, evidenced by correspondence from DOJ establishing the review period. In the event DOJ comments negatively on the provisions of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issues raised by DOJ.

## VIII.   WAIVER AND RELEASES

29. **Baykeeper Waiver and Release of Noticed Parties**: Baykeeper, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors and assigns releases SOS Steel, its officers, directors, employees, members, parents, subsidiaries, affiliates, successors or assigns, agents, attorneys and other representatives from and waives all claims raised in the 60-Day Notice and complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed.

30. **SOS Steel's Waiver and Release of Baykeeper**: SOS Steel, on its own behalf and on behalf of its officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns release Baykeeper and its officers, directors, employees, members, parents, subsidiaries, and affiliates,

and each of their successors and assigns from, and waive all claims which arise from or pertain to, the 60-Day Notice and complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed.

### IX.   MISCELLANEOUS PROVISIONS

31. **Execution in Counterparts**: This Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

32. **Signatures**: The Settling Parties' signatures to this Consent Decree transmitted by facsimile or electronic mail transmission shall be deemed binding.

33. **Construction**: The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning.  The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

34. **Authority to Sign**: The undersigned are authorized to execute this Consent Decree on behalf of their respective Settling Party and have read, understood and agreed to all of the terms and conditions of this Consent Decree.

35. **Integrated Consent Decree**: All agreements, covenants, representations and warranties, express or implied, oral or written, of the Settling Parties concerning the subject matter of this Consent Decree are contained herein.

36. **Severability**: In the event that any of the provisions of this Consent Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

37. **Choice of Law**: This Consent Decree shall be governed by the laws of the United States or, where applicable, the laws of the State of California.

38. **Full Settlement**: This Consent Decree constitutes a full and final settlement of this matter.

39. **Effect of Consent Decree**: Compliance with this Consent Decree does not mean SOS Steel is complying with the Industrial Stormwater Permit, Clean Water Act, or any other law, rule, or regulation.

40. **Negotiated Agreement**: The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Settling Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Settling Party.

41. **Modification of the Agreement**:  This Consent Decree, and any provisions herein, may not be changed, waived, or discharged unless by a written instrument signed by each of the Settling Parties.

42. **Assignment**:  Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Settling Parties, and their successors and assigns.

43. **Notices and Submissions**:  Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Baykeeper pursuant to this Consent Decree shall be, to the extent feasible, sent via electronic mail transmission to the e-mail address listed below or, if electronic mail transmission is not feasible, via certified U.S. Mail with return receipt, or by hand delivery to the following address:

>San Francisco Baykeeper
>Attention: Nicole Sasaki
>1736 Franklin Street, Suite 800
>Oakland, California 94612
>E-mail:  nicole@baykeeper.org

Unless requested otherwise by SOS Steel, any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to SOS Steel pursuant to this Consent Decree shall, to the extent feasible, be provided by electronic mail transmission to the e-mail addresses listed below, or, if electronic mail transmission is not feasible, by certified U.S. Mail with return receipt, or by hand delivery to the addresses below:

>S.O.S. Steel Company, Inc.
>Attention: Steve Boucher
>1160 Richard Avenue
>Santa Clara, California 95050
>Email: steveb@sossteelco.com

With a copy to:

>Christopher J. Hersey
>Ventura Hersey & Muller LLP
>1506 Hamilton Avenue
>San Jose, California 95125
>Email: chersey@venturahersey.com

Notifications of communications shall be deemed submitted on the date that they are emailed, or postmarked and sent by first-class mail or deposited with an overnight mail/delivery service.  Any

changes of address or addressees shall be communicated in the manner described above for giving notices.

44. **Deadlines Falling on Non-Business Days:** Any deadlines relating to this Consent Decree which fall on the weekend or on a federal holiday shall be extended to the following business day.

45. **Impossibility of Performance:** No Settling Party shall be considered to be in default in the performance of any of its obligations under this Consent Decree when performance becomes impossible due to circumstances beyond the Settling Party's control, including without limitation any act of God, act of war or terrorism, fire, earthquake, and flood. "Circumstances beyond the Settling Party's control" shall not include normal inclement weather, economic hardship, or inability to pay. Any Settling Party seeking to rely upon this Paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid, and which by exercise of due diligence has been unable to overcome, the impossibility of performance.

The Settling Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

APPROVED AS TO CONTENT

SAN FRANCISCO BAYKEEPER

Date: 6/6/19

By: _____
Sejal Choksi-Chugh
Executive Director, San Francisco Baykeeper

S.O.S. STEEL COMPANY, INC.

Date: 6-17-2019

By: Steve Boucher
Title: President, S.O.S. Steel Company, Inc.

| | | |
|---|---|---|
| 1 | APPROVED AS TO FORM | |
| 2 | | SAN FRANCISCO BAYKEEPER |
| 3 | | |
| 4 | Dated: June 7, 2019 | By: _____ |
| 5 | | Nicole C. Sasaki<br>Attorney for Plaintiff |
| 6 | | |
| 7 | | VENTURA HERSEY & MULLER LLP |
| 8 | Dated: June 17, 2019 | By: _____ |
| 9 | | Christopher J. Hersey<br>Attorney for Defendant |
| 10 | | |
| 11 | **IT IS SO ORDERED.** | UNITED STATES DISTRICT COURT |
| 12 | | NORTHERN DISTRICT OF CALIFORNIA |
| 13 | Date: _____ | |
| 14 | | _____<br>Honorable Susan van Keulen<br>United States Magistrate Judge |